```
              IN THE UNITED STATES DISTRICT COURT
                FOR THE DISTRICT OF NEW JERSEY
```

|  |  |
|---|---|
| EDWIN L. KING, JR. and<br>GARY W. DONAHUE,          | HON. JEROME B. SIMANDLE |
|            Plaintiffs,                               | Civil No. 04-5712 (JBS) |
|     v.                                               | **OPINION** |
| JOCKEYS' GUILD, INC.,                                |  |
|            Defendant.                                |  |

APPEARANCES:

Alan C. Milstein, Esq.
Michael Dube, Esq.
SHERMAN, SILVERSTEIN, KOHL,
   ROSE & PODOLSKY, P.C.
Fairway Corporate Center
4300 Haddonfield Road, Suite 311
Pennsauken, NJ 08109
     Attorneys for Plaintiffs

Richard M. Beck, Esq.
KLEHR, HARRISON, HARVEY,
   BRANZBURG & ELLERS, LLP
457 Haddonfield Road, Suite 510
Cherry Hill, NJ 08002
     Attorney for Defendant

**SIMANDLE**, District Judge:

   This matter, filed under the Labor Management Reporting and Disclosure Act's ("LMRDA") Bill of Rights within the exclusive jurisdiction of this Court, see 29 U.S.C. §§ 411-12, comes before the Court on the motion of Defendant Jockeys' Guild, Inc. to dismiss Plaintiffs Edwin King and Gary Donahue's First Amended Complaint on the ground that this Court should abstain because the instant lawsuit contains claims parallel to those raised in a

pending state court action, thus resulting in duplicative litigation.  This Court must determine: (1) whether the state and federal actions are in fact parallel; and (2) whether this case presents an "exceptional circumstance" where the Court may abstain from exercising jurisdiction following <u>Colorado River Water Conservation District v. United States</u>, 424 U.S. 800, 817 (1976) and its progeny.  For the reasons discussed herein, Defendant's motion to dismiss will be denied.

## I.   BACKGROUND

The Jockeys' Guild, Inc. ("The Guild") is an organization[1] of approximately 1300 professional jockeys headquartered in California that owns and/or operates the Disabled Jockeys' Fund, Inc. ("The Fund"), a 26 U.S.C. § 501(c)(3) tax-exempt corporation.  (First Amended Compl. ¶ 14; Def. Br. at 2.)  The Fund was designed to provide relief to members of The Guild who became temporarily or permanently disabled while riding a horse.  (First Amended Compl. ¶ 18.)  In addition, each member was promised benefits from The Guild's medical insurance policy which covers expenses from on-track accidents.  (<u>Id.</u> at ¶ 19.)  Plaintiffs Edwin L. King, Jr. and Gary Donahue were both members of The Guild for approximately 25 years.  (<u>Id.</u> at ¶¶ 10-11.)

---

[1] Plaintiff contends that The Guild is a labor organization pursuant to 29 U.S.C. § 402(i) because, <u>inter</u> <u>alia</u>, "it is empowered to engage in collective bargaining."  (Compl. ¶ 13.)

Mr. Donahue not only served as Co-Chairman of The Fund, but also received disability benefits after being thrown from a horse in 1986.  (Id. at ¶¶ 12, 26-27.)

On or around April 15, 2001, Dr. L. Wayne Gertmenian and Plaintiff Edwin King became President and Treasurer, respectively, of The Guild.  (Id. at ¶¶ 28, 32.)  Mr. King held this position in addition to serving on the Guild Senate.[2] (Id. at ¶ 25.)  Dr. Gertmenian, having "the general powers and duties of management customarily vested in the CEO of a corporation,"[3] once spoke with Plaintiff King about the idea of divesting approximately $1,000,000 from The Fund in an effort to increase the amount of donations from benefactors.  (Id. at ¶ 33.)  Mr. King neither agreed with nor challenged Dr. Gertmenian's idea.[4] (Id. at ¶ 34.)  Also, in April 2002, Dr. Gertmenian allowed The Guild's insurance policy to lapse without Mr. King's knowledge.  (Id. at ¶ 35.)  At the end of 2002, Mr. King discovered that The Fund's net assets had decreased by approximately $1,000,000.

---

[2] The Senate consists of 27 members who partly oversee the operations of The Guild.  (First Amended Compl. ¶ 21.)

[3] This description of the President's powers appears in Article IX of the Bylaws of The Jockeys' Guild.  (First Amended Compl. ¶ 20.)

[4] Plaintiffs maintain that Mr. King did not challenge the idea because Dr. Gertmenian had a Ph.D. as opposed to Mr. King's limited educational background.  (First Amended Compl. ¶¶ 33-34.)

(Id. at ¶¶ 37-38.)  At that time, Plaintiff King began to send emails and letters asking for an accounting of The Fund.[5]  (Id.; Def. Br. Ex. 1A.)

The controversy surrounding the management of The Fund's assets became public knowledge on July 20, 2004, when a member of The Guild was injured in a horse race but could not receive benefits because the insurance policy had lapsed.  (First Amended Compl. ¶¶ 39-40, 43.)  Later in September 2004, Plaintiff King gave an interview to SportsBusiness Journal regarding The Guild's financial accountability.[6]  (Id. at ¶¶ 44-45.)  As a result, on November 7, 2004, The Guild Senate met to remove Plaintiff King from his position, and subsequently voted him out of The Guild completely for "making inquiries and expressing his opinion regarding [T]he Guild, including the need for an accounting of Guild monies."  (Id. at ¶¶ 50, 53-54.)  Although the purpose of the meeting was to vote on King's removal from office, Plaintiff King was not given "written or oral notice of the charges or an opportunity to present a defense."  (Id. at ¶ 51.)  Similarly, Plaintiff Donahue was removed from his position as Co-Chairman of

---

[5] Plaintiff repeatedly sent emails dating from May 2003 to November 2004.  (Def. Br. Ex. 1A.)

[6] It is unknown what exactly Plaintiff stated in the SportBusiness Journal article entitled, "Jockeys Press Guild for Financial Info: A Board Member Wonders If $1M Is Missing From Disabled Riders' Fund," written by Liz Mullen.  (First Amended Compl. ¶¶ 44-45.)

4

The Fund for "making inquiries and expressing his opinion regarding [T]he Guild."  (Id. at ¶ 55.)

On November 17, 2004, Plaintiff King filed a one-count Complaint in this Court alleging violations of the LMRDA's Bill of Rights under 29 U.S.C. § 411.  (Compl. ¶¶ 50-55.)  The Complaint alleges a violation of the LMRDA Bill of Rights which grants every member of a labor organization equal rights, protection of the right to sue, safeguards against improper disciplinary action and the right to freedom of speech.  29 U.S.C. § 411(a)(1)-(5).  The Complaint was amended on December 28, 2004 to include Mr. Donahue as a plaintiff, asserting the same allegation as Mr. King.  Specifically, Plaintiffs contend that Defendant violated their rights to "express any views, arguments, or opinions," 29 U.S.C. § 411(a)(2), and furthermore that "no member . . . may be fined, suspended, expelled, or otherwise disciplined . . . unless such member has been (A) served with written specific charges; (B) given a reasonable time to prepare his defense; (C) afforded a full and fair hearing."  29 U.S.C. § 411(b).  Plaintiff King requests, inter alia, reinstatement to The Guild and an amount in damages exceeding $25,000.  (First Amended Compl. ¶ 62.)  Count Two contains identical allegations on behalf of Plaintiff Donahue, with identical relief sought.  (Id. at ¶¶ 64-68.)

5

On the same day that his federal complaint was filed, Plaintiff King filed a complaint in the Chancery Division of the Superior Court of New Jersey alleging that The Guild violated the Labor Management Reporting and Disclosure Act ("LMRDA"), 29 U.S.C. § 401, et seq.; § 431.[7] (Def Br. Ex. 1 ¶¶ 63-66; see also Def. Br. Ex. 2.) Specifically, the LMRDA requires "[e]very labor organization [to] file annually with the Secretary a financial report signed by its president and treasurer or corresponding principal officers . . . to disclose its financial condition and operations for its preceding fiscal year . . . [and] to make available the information required to be contained in such report to all of its members." 29 U.S.C. §§ 431(b),(c). Plaintiffs in State Court are requesting injunctive relief ordering Defendant to perform an accounting of The Guild and The Fund, inter alia. (Def. Ex. 1 ¶ 72.)

On March 7, 2005, Defendant filed the instant motion to dismiss Plaintiff's Complaint on the basis of abstention.

## II.   DISCUSSION

The present action under the LMRDA's Bill of Rights, 29 U.S.C. § 411, lies within the exclusive jurisdiction of this Court. See 29 U.S.C. § 412. Defendant's abstention motion, if granted, would have the effect of closing the door to Plaintiffs

---

[7]The complaint was amended on December 2, 2004 to include Mr. Donahue as a plaintiff. (Def. Br. Ex. 1., Pl. Br. at 8.)

in the only court having jurisdiction to hear this claim, in favor of awaiting developments in the Superior Court action.  For the foregoing reasons, this Court declines to abstain.

This motion presents an issue of Colorado River abstention, in which the Court must decide whether to abstain from hearing a case over which it has validly conferred jurisdiction and which essentially echoes litigation simultaneously occurring in state court in an effort to avoid duplicative litigation.  In general, federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them by Congress."  Ryan v. Johnson, 115 F.3d 193, 195 (3d Cir. 1997) (quoting Colorado River Water Conservation District v. United States, 424 U.S. 800, 817 (1976)).  Where a case is concurrently filed in state court and contains like issues, a federal court may still hear it, provided that jurisdiction is appropriate.  Id.  However, a court may choose to abstain from exercising its jurisdiction pursuant to the abstention doctrine outlined in Colorado River.  This "extraordinary and narrow" doctrine justifies a court's abstention in those cases "where order[ing] . . . the parties to repair to the state court would clearly serve an important countervailing interest."  Colorado River, 424 U.S. at 813.  In deciding to abstain, the court should consider "the conservation of judicial resources and comprehensive disposition of

litigation" to avoid duplicative proceedings.  <u>Complaint of Bankers Trust Co v. Chatterjee</u>, 636 F.2d 37, 40 (3d Cir. 1980).

A.  <u>Analysis of the State and Federal Actions</u>

A preliminary issue to be determined before a court may abstain is whether the state and federal actions are parallel.  <u>Ryan</u>, 115 F.3d at 196.  "Cases are parallel . . . when they involve the same parties and claims."  <u>Trent v. Dial Medical of Florida</u>, 33 F.3d 217 (3d Cir. 1994).  If the claims, parties, or relief sought are different in the two cases, then abstention may not be appropriate.  <u>Chatterjee</u>, 636 F.2d 37.  <u>Compare</u> <u>Moses H. Cone Memorial Hosp. v. Mercury Construction Corp.</u>, 460 U.S. 1 (1983) (upholding abstention because the cases involved identical parties, although the defendants in the federal cases were plaintiffs in the state cases) <u>with</u> <u>University of Maryland v. Peat Marwick Main & Co.</u>, 923 F.2d 265 (3d Cir. 1991) (reversing a district court's abstention because the number of plaintiffs and claims differed in the two cases).

Here, Plaintiffs have similarly worded complaints filed in both courts but each contains slightly different allegations and relief sought.  At first glance, the Complaint filed in this Court and the state Complaint closely resemble one another.  In fact the parties are exactly the same, and the factual

allegations are nearly identical.[8] (See First Amended Compl. ¶¶ 7-56; Def. Br. Ex. 1 ¶¶ 7-61.) Substantively, the state action concerns The Guild's bookkeeping and its members' rights to all accounting. (Def. Br. Ex. 1 ¶¶ 63-64.) Accordingly, Plaintiffs are demanding injunctive relief, ordering Defendant to continue to file an annual report and make it available to every member. (Id. at ¶ 72.) In the federal action, Plaintiffs are also litigating The Guild members' rights. However, the federal action concerns the right to freedom of speech and a fair hearing before suspension, not access to financial records like the state action. (First Amended Compl. ¶¶ 58-59, 64-65.) Accordingly, Plaintiffs here are each demanding $25,000 in compensatory damages and punitive damages. (Id. at ¶¶ 62, 68.) While the right to The Guild's financial records is separate from the right to express an opinion and be afforded a fair hearing, both are nonetheless related to the general rights of labor organization members.

    Courts in the Third Circuit have previously opined on how to determine if state and federal actions are parallel when the two are nearly identical. In Trent v. Dial Medical of Florida, 1992 U.S. Dist. LEXIS 19609, 4-5 (E.D. Pa. 1992), aff'd 33 F.3d 217 (3d Cir. 1994), a dialysis treatment patient who received

---

[8] All but three of the factual allegations in the federal complaint are also mentioned in the state complaint. (Compare First Amended Compl. ¶¶ 7-56 with Def. Br. Ex. 1 ¶¶ 7-61.)

9

aluminum poisoning, brought a negligence class action suit against the treatment center and a supplier. At the same time, the estate of another patient who received aluminum poisoning, brought a similar class action suit against the treatment center and its medical directors in state court. The state action alleged, <u>inter alia</u>, negligence, outrageous conduct and wrongful death. The district court found that the federal action was parallel to the state action because the two were "substantially identical." <u>Trent v. Dial Medical of Florida</u>, 33 F.3d 217, 224. The two cases in <u>Trent</u> "raise[d] nearly identical allegations and issues, and the defendants in each [were] essentially identical." <u>Id.</u> Furthermore, the Court acknowledged that the plaintiffs in the two cases were effectively the same. <u>Id.</u> The same is superficially true in the instant case, as the plaintiffs are identical, and the issues presented concern the rights of labor organization members, but the rights asserted in the two cases are distinct in statutory law and essential elements. Thus, the federal and state suits do not contain essentially the same claims. Overall, the federal and state cases are not "substantially identical," and this Court does not find the state and federal actions to be parallel.

B.  <u>Application of Abstention Factors</u>

Even if one were to assume for the sake of argument that the two actions were parallel, even though one lies in the exclusive

10

jurisdiction of this Court, a court "must balance [its] obligation to exercise jurisdiction against factors militating toward abstention." Trent v. Dial Medical of Florida, 1992 U.S. Dist. LEXIS 19609, 5 (E.D. Pa. 1992), aff'd 33 F.3d 217 (3d Cir. 1994). In Colorado River, the Supreme Court developed a six-factor exceptional circumstances test which governs a district court's decision to abstain or not, including:

> (1) Which court first assumed jurisdiction over property involved, if any;
> (2) Whether the federal forum is inconvenient;
> (3) The desirability of avoiding piecemeal litigation;
> (4) The order in which the respective courts obtained jurisdiction;
> (5) Whether federal or state law applies; and
> (6) Whether the state court proceeding would adequately protect the federal plaintiff's rights.

Trent v. Dial Medical of Florida, 33 F.3d 217, 225 (3d Cir. 1994); see Colorado River, 424 U.S. at 818-19. The Court is advised to thoroughly apply each factor to be sure that abstention is only used in those particularly "exceptional circumstances." "No one factor is necessarily determinative; a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counselling against that exercise is required. Only the clearest of justifications will warrant dismissal." Colorado River, 424 U.S. at 818-19.

Applying those factors to the present case, the Court finds no exceptional circumstances to justify abstention from the exercise of its exclusive jurisdiction under the provisions of 29 U.S.C. § 411.  The first and second factors are inapplicable here because there is no property involved and Defendant has not made any argument claiming that this forum is inconvenient.

The third factor, however, which attempts to avoid piecemeal litigation, is pivotal to this case.  Cf. Moses H. Cone, 460 U.S. 1, 21 (1983) (emphasizing that the paramount factor in justifying abstention in Colorado River was the avoidance of piecemeal litigation).  Defendant points out that there are common statutory questions presented in both the federal and state cases that must be decided before proceeding with the claims, such as whether The Guild is a "labor organization", and if so whether Plaintiffs qualify as "members."  (Def. Br. at 7-8;) See 29 U.S.C. § 402(i) and (o).  In addition, Defendant maintains that litigating these preliminary issues in both courts poses a risk of inconsistent results.[9]  (Def. Br. at 8.)  However, the statute at issue in the federal case expressly provides that federal court is the appropriate forum for adjudicating the rights conferred by 29 U.S.C. § 411, stating:

---

[9]The Court recognizes that litigation in one court over whether The Guild is a labor organization could result in a binding decision and have a res judicata effect on the other court. However, as described infra, the Court finds other reasons to not abstain from exercising jurisdiction.

12

> Any person whose rights secured by the provisions of this subchapter have been infringed by any violation of this subchapter may bring a civil action in a district court of the United State for such relief (including injunctions) as may be appropriate. Any such action against a labor organization shall be brought in the district court of the United States for the district where the alleged violation occurred, or where the principal office of such labor organization is located.

29 U.S.C. § 412. On the other hand, the jurisdictional statute at issue in the state action gives a choice of two fora in which plaintiffs may bring suit. Specifically the statute states in relevant part:

> [E]very such labor organization and its officers shall be under a duty enforceable at the suit of any member of such organization in any State court of competent jurisdiction <u>or</u> in the district court of the United States for the district in which such labor organization maintains its principal office, to permit such member for just cause to examine any books, records, and accounts necessary to verify such report.

29 U.S.C. § 431(c) (emphasis added). In the interest of conserving judicial resources, litigating in one forum would be desirable for these lawsuits, but piecemeal litigation can be justified by the intent of this statute to give a choice of which forum to bring causes of action. Congress has evinced a strong preference for adjudication of § 411 claims solely in federal court. To abstain in order to await state adjudication of facts

13

that may be essential to prevail under § 411, over the objection of Plaintiffs, would run counter to the legislative purpose.

The fourth factor, "the order in which the respective courts obtained jurisdiction," carries no weight because as described supra, the federal and state complaints were both filed on November 17, 2004.  (Docket Item 2; Def. Br. Ex. 2.)  Therefore the courts obtained jurisdiction simultaneously.

Defendant avoids arguing the application of the fifth factor, "whether federal or state law applies."  In any event, it is clear that each of the applicable statutes, 29 U.S.C. §§ 401, 431, and 411-12, all arise under federal law, and that jurisdiction of Plaintiff's § 411-12 claims is exclusively federal.  This factor favors Plaintiff's position.

The sixth and final factor, "whether the state court proceeding would adequately protect the federal plaintiff's rights," cuts in favor of Plaintiffs.  As described supra, the statute at issue here only allows plaintiffs to bring suit in district courts.  See 29 U.S.C. § 412.  Therefore, it is not reasonable to expect the Superior Court to adequately protect Plaintiff's rights because the statute at issue gives this Court exclusive jurisdiction for the § 411 claims.  At most, the Superior Court's resolution of any common factual issue by final adjudication may preclude the unsuccessful party from

relitigating the same fact in this forum under ordinary rules of collateral estoppel, and not due to abstention.

Accordingly, this Court holds that where a plaintiff initiates related suits under the LMRDA in federal and state fora on the same day, asserting distinct claims whereby the claims asserted herein under 29 U.S.C. § 411 lie within the exclusive jurisdiction of the federal court, Colorado River abstention would be inappropriate and contrary to this Court's "virtually unflagging obligation . . . to exercise the jurisdiction given by Congress." Colorado River, supra, 424 U.S. at 817.

### III.  CONCLUSION

For the above stated reasons, this Court will deny Defendant Jockeys' Guild, Inc.'s motion to dismiss, and will allow the pending case filed in this Court to proceed. The accompanying Order will be entered.

**July 26, 2005**                              **s/ Jerome B. Simandle**
Date                                                   JEROME B. SIMANDLE
                                              United States District Judge

15